RUSSELL WHEELER AND FRANK E. WHEELER v. LOUISA MEYER AND JOHN F. GUILLOZ.

*Bond—Estoppel—Principal and surety—Measure of damages.*

1. A mortgagor, in order to regain possession of a stock of goods, gave the mortgagees a bond, conditioned that he would take possession of the goods, an inventory of which was said to be attached to the bond, and sell them at the best prices obtainable, not less than manufacturers' prices, and pay over the proceeds as the goods were sold. The bond also provided that the obligees should not be prevented thereby from taking possession of the goods in case they deemed themselves insecured. A portion of the goods consisted of second-hand furniture, machinery, and other articles used in the conduct of the business, some of which had merely a nominal value, and another portion consisted of broken lots, damaged goods, etc. After conducting the business for nearly three years, and paying a portion of the debt, the mortgagees demanded the goods, and on their non-delivery sued the mortgagor and his surety on the bond for their value. And it is held:

a—That the mortgagor cannot litigate the question of the ownership of any of the goods actually released to him, nor

whether all of the goods seized under the mortgage were so released.

b—That, if the inventory was not exhibited to the surety, she is not estopped from saying that it included articles which the mortgagor did not have, or which never came into the possession of the mortgagees, and were never delivered to the mortgagor by them.

2. In passing upon the question of damages, it is held that the following is the proper measure thereof:

a—For goods on hand at the time of the demand, their then value.

b—For goods which had been in good faith and honestly sold, the proceeds of such sales.

c—For goods converted and not accounted for, their value when so converted.

Error to Wayne. (Gartner; J.) Argued January 13, 1893. Decided March 10, 1893.

*Assumpsit.* Defendants bring error. Reversed. The facts are stated in the opinion.

*Albert J. Chapman,* for appellants.

*Corliss, Andrus & Leete,* for plaintiffs.

McGRATH, J. John F. Guilloz and Samuel J. Guilloz, as copartners, under the name of Guilloz Bros., had been in business as plumbers and steam fitters for some years. They were indebted to plaintiffs in the sum of $4,165, and December 27, 1888, to secure plaintiffs, gave to them a bill of sale of their entire assets, including accounts receivable, as well as tinners' tools, steam-fitters' tools and machines, pulleys, and belting, office furniture and fixtures, safe, engine, and boiler, horse, wagon, buggy, sleigh, and harnesses. On the morning of the next day, plaintiffs took possession of the stock and store, placing the same in charge of a constable. Plaintiffs then proceeded to inventory the goods and articles in the store, and posted notices of the sale thereof. John F. Guilloz did

not aid or participate in the preparation of this inventory. Samuel J. assigned to John F. all his interest in the business, and John F. began negotiations for the possession of the stock, which culminated in the execution of a bond on January 10, 1889, by John F. Guilloz, as principal, and Louisa Meyer, as surety, to plaintiffs, in the penal sum of $2,500, and the transfer of the possession of the stock to defendant Guilloz. Plaintiffs retained possession of certain accounts receivable, which were assigned to them to apply on the old account when collected. The bond recited the possession of the stock by plaintiffs under the bill of sale; the purchase of the interest of Samuel J. by John F.; the latter's desire to regain possession of the stock, " to be returned to him, and to take charge of the same, accounting to said obligees for the possession of said stock;" and concluded as follows:

" Now, therefore, if said John F. Guilloz shall well and truly take possession of said stock of goods and chattels, an inventory of which is hereunto attached, marked ' Exhibit A,' and made a part hereof, and shall honestly and in good faith sell the same for the best price obtainable, at not less than manufacturers' prices, delivered in Detroit, and shall. pay over at once, from .time to time, as the said stock may be sold, all the proceeds of sales from said stock and chattels mentioned in said Exhibit A, until the proceeds of such sales so paid over shall amount to the sum of two thousand five hundred dollars, then the preceding obligation to be null and void; otherwise, in full force and effect. It is understood, however, that the above is not to prevent the said obligees from retaking possession of said stock at any time in case they should feel insecured."

Exhibit A, referred to in the said bond, listed the following articles (the paragraphing and classification have been done for our convenience here):

1. 1coulter cleaner; 8 hitching posts; 1 hoe; 4 covering bars; 1 gas engine, fittings, and belting; 3 radiators; 1 box furnace fittings; 18 register borders; 3 register faces; 8 registers; 1 large border; 1 box fittings; 8 No. 40 Palace

Queen furnaces, 4 No. 44 ditto, and 2 No. 50 ditto, with fixtures for same; 1 water gauge; 1 length 9-inch furnace pipe; 3 lengths 12-inch ditto; 2 sets furnace castings; 2 wall pipes; 20 horse weights; 1 scientific heater; 1 radiator; 2 borders; 2 registers; 2 register borders; 11 valves; 3 boxes; stove bolts; ½ box screw hooks; 6 boxes pulleys; 4 boxes damper handles; 6 wire guards; 5 marble slabs; 12 sheets black iron; 4 lengths smoke pipe; 9 lengths T joints; 45 joints wall pipe; 1 stake; 19 pieces 9-inch pipe; 11 pieces 12-inch ditto; 14 12-inch elbows; 11 register boxes; 1 large box fittings; 5 boxes tin; quantity of gas pipe; 1 lot furnace elbows, and pipe; 6 furnaces and fittings; furnace trimmings; 1 No. 40 furnace set up.

2. 1 pair platform scales; 1 vise; 1 truck; 1 can paint; 2 office desks; 1 lock case and locks; 1 safe; 1 small coal stove and pipes; 4 office chairs; 1 letter press; 1 box bronze powder; 1 letter-press stand; 1 pair core boxes; 1 fishing rod; 3 directories; 1 gazeteer; 40 patterns; 1 cutting machine; 1 folder; 1 rolling machine; 1 crimping machine; 1 seaming machine; 1 step-ladder; 3 pieces machinery; 1 drilling machine, and 8 drills; 1 pipe machine and fittings; 1 emery grinder; 1 forge; 1 fire pot; 2 horses; 1 wagon; 1 buggy; 1 sleigh and harness.

3. Quantity scrap furnice pipe; 28 old register borders; 12 old register faces; ⅔ broken marble slabs; about two bushels old steam fittings; 27 lengths old pipe; pieces of old furnace.

John F. Guilloz continued in business, making remittances to plaintiffs, buying other goods from them, without complaint, until November 23, 1891, when plaintiffs served the following written demand upon him:

"Take notice that we hereby demand the immediate delivery to us of the property described in Exhibit A, a copy of which is hereto annexed, which exhibit of property was attached to a bond executed by you to us in the sum of twenty-five hundred dollars ($2,500), bearing date the 10th day of January, 1889, the conditions of said bond being such that said Guilloz was permitted to sell and dispose of said goods, and to pay to the undersigned the sum of twenty-five hundred dollars ($2,500). Also take notice that, in default of the delivery of said goods, you are required to pay the sum mentioned in said bond

above described, and, in default thereof, legal proceedings will be taken to enforce the collection thereof."

Exhibit A, attached to this written notice, is an exact copy of the inventory which it is claimed was pinned to the bond sued upon, and included all the property turned over to John F. Guilloz January 10, 1889.

This suit was afterwards brought. Plaintiffs admitted the payment by Guilloz of $475, and credited him with other items of cash received from assigned accounts over and above the amount necessary to reduce the old account down to $2,500, and recovered judgment for $1,813.16, the amount of the bond, less the cash payment of $475 and the aforesaid credits.

Defendants insisted:

1. That there was no inventory attached to the bond at the time of its execution by either principal or surety; that neither saw the inventory until the written demand aforesaid was made upon defendant Guilloz; that the inventory included property which was not in the store, and the possession of which was never turned over to defendant Guilloz; that the inventory included articles which had not been included in the bill of sale, and which had not belonged to Guilloz Bros., to John F. Guilloz, or to plaintiffs. It was claimed by plaintiffs that the inventory was a slip cut from one of the notices of sale which plaintiffs had prepared after taking the inventory; that this inventory had never been permanently attached to the bond, but it was claimed that it was pinned on.

2. That a large number of the articles included in Exhibit A were unsalable, and a large number could not be sold at manufacturers' prices.

3. That defendant Guilloz had accounted to plaintiffs for every article sold, and defendants sought to show upon the trial what articles had been sold.

The court instructed the jury as follows:

"As far as the inventory of this property is concerned, the defendants, Louisa Meyer and John F. Guilloz, are bound by Exhibit A, because Exhibit A is mentioned in

the body of the bond, and is particularly referred to. In other words, when Mr. Guilloz and Mrs. Meyer signed this bond, and Mr. Guilloz took possession of the property, the delivery of this bond is acknowledgment by him, under the law, that he received all the property mentioned in this inventory; that every article of property which is mentioned in this inventory was turned over to him, and he received it; and, under the law, he cannot at this time say, ‘I did not receive certain portions of that property;’ nor can he come in and say that certain property mentioned in that inventory was owned by other persons, and not by the firm of Guilloz Bros., because that is a question which we cannot litigate in this case. Under the law, the execution and delivery of this bond and the receipt of this property was an acknowledgment by him that he received the property mentioned in the bond, which he then delivered, and which he received only upon the delivery of the bond.

"Having said this, the first question of fact which arises in this case will be as to value of this property. It was contended by counsel that the property was valued according to the provisions of this bond at $2,500. Now, that is the penalty of the bond. I do not take it, under the terms of this bond, that that definitely fixes the value of the property; but, as far as the value of the property is concerned, that will remain for you to determine, under all the evidence in the case. Upon that question you have the testimony of Mr. Lillibridge, who says that Mr. Guilloz acknowledged to him that the property was worth $2,500. This, however, is denied by Mr. Guilloz; and it will be for you to say what the fact is. You also have the testimony of Mr. Hilsendegen in regard to the value of the property. So the first question to determine will be as to whether this property was worth $2,500,—the property mentioned in this inventory,—whether it was worth $2,500; and, if not, then how much was it worth? You cannot exceed the amount of $2,500, because that is the penalty of the bond. It will be for you to determine whether it was worth that amount, and, if not, then how much was this property mentioned in the inventory worth?

"The next question for you to determine will be as to what credits Mr. Guilloz is entitled to upon the sum which you may find. Upon the question of credits, I shall not attempt at this time to review the evidence. It is somewhat lengthy, and has been referred to by counsel. It

is for you to say what credits you find Mr. Guilloz is entitled to, and what should be credited upon the sum which you may find the property is worth. As far as the liability under the bond is concerned, I may say at this time that it was his duty to go on and sell the property for the best price obtainable, not less than manufacturers' prices. Certain property remained over, a demand was made upon him, and he refused to give up this property. Then, gentlemen of the jury, the action of the plaintiffs became complete, and they were entitled to commence suit under the bond."

Respecting the inventory, the learned judge was undoubtedly correct as to any articles which were actually in the possession of plaintiffs, and had been taken from Guilloz Bros. Plaintiffs had seized the property under their bill of sale or mortgage, and had possession. They were entitled to litigate the question of ownership of the property held by them, had such question been raised. It was for the possession of that property that defendant Guilloz was negotiating. He received it, and agreed to account for it. He cannot be heard now to say that certain of that property, which was released to him, in fact belonged to others; nor can he be heard at this late day to say that all the property seized by the plaintiffs was not returned to him. But, if the inventory was not in fact exhibited to the surety, she is not estopped from saying that it included articles which Guilloz Bros. did not have, or which never came into the possession of plaintiffs, and were never received by defendant Guilloz from the plaintiffs. The bond recites the possession by plaintiffs of the goods and chattels under the bill of sale; that defendant Guilloz wishes possession of said stock, and to take charge of the same, accounting to said obligees for the possession of said stock; and then proceeds as follows:

"If said John F. Guilloz shall well and truly take possession of said stock of goods and chattels, an inventory *of which* is hereto attached, marked 'Exhibit A.'"

If, by fraud or mistake, articles included in the inventory which were not covered by the bill of sale, which did not come into the possession of the plaintiffs, and which were not delivered over to defendant Guilloz, he could not be charged with them, and most certainly the surety could not. The bill of sale called for but one horse, but the inventory covered two horses. If plaintiffs had possession of but one, and delivered over but one, defendants can be charged with but one. While the bond referred to an inventory, it referred to that inventory as simply a further descripton of property already described generally by reference to a bill of sale, as well as the location of the property. It was but a more specific description of articles which were in plaintiffs' possession, which had been taken from Guilloz Bros. under a bill of sale or mortgage; and it purported to be an inventory of such property, and only such property.

Upon the question as to the measure of plaintiffs' damages, we think that the court was clearly in error. This was not a sale of this property to defendant Guilloz at a price determined upon. The surety's liability must depend upon the non-performance of the condition of the bond. John F. Guilloz agreed to take possession of this stock, and to account for it, and honestly and in good faith to dispose of the same, and to account for the proceeds of all sales to plaintiffs; the plaintiffs reserving the right to take possession of said stock at any time in case they should feel insecured. It will be observed that the articles embraced in paragraph numbered 2 of the inventory consist of furniture, tools, machinery, and other articles used in the conduct of the business, and not kept for sale in said business. Some of them had a merely nominal value; all were second-hand articles, many of them having been used for many years, and their value had depreciated with the use. Defendant had continued to do business for

nearly three years, using these articles in connection with that business, as it was evidently intended he should. During this time, plaintiffs had sold him quantities of goods, and a somewhat extensive correspondence covered the period. No objection was, however, made by plaintiffs, and no demand made that the articles in the possession of defendant Guilloz, used in his business and belonging to plaintiffs, should be closed out. The value of these articles had become further depreciated by use. The articles included in paragraph numbered 3 of the inventory were odds and ends, some of them designated as "scrap."

If it was intended by this provision that none of the articles embraced in the inventory should be disposed of except at manufacturers' prices, then the sale of the articles named in the second and third paragraphs was practically prohibited by the very terms of the bond itself. Certain of the goods had been already sold and accounted for. Just what goods, defendants were not allowed to show. It does not appear whether they were sold at manufacturers' prices or not; nor does it appear that defendant had not in such sales acted honestly and in good faith. If certain of the articles sold were broken lots, damaged goods, old furnaces, broken slabs, scrap, or second-hand furniture or tools, and defendant acted honestly and in good faith in the disposal of them, defendants cannot be charged with the difference between the original manufacturers' prices and the sums actually received. If any of the articles were actually on hand at the time of the demand, defendants can only be charged with the value at that time, and not with their value three years before that time. The surety could not be charged with any estimate as to value not set forth in the instrument. Her undertaking was not to pay Guilloz' debt, nor to pay any fixed price, not stated in the bond, for the articles; nor was it to pay the then value at some future period, especially after plaintiffs had allowed defend-

ant to use the articles for years, and by such use to depreciate their value.   As to the articles which were on hand at the time of the demand, they had not been appropriated until the refusal to deliver them, and the measure of damages as to them was their value at that time.   As to the articles which had been in good faith and honestly sold, the proceeds of such sales was the measure as to them.   As to the other articles, if any, which had been converted and not accounted for, the value at the time of such appropriation was the criterion.

The case was tried upon the theory outlined in the instructions to the jury, and it is unnecessary to discuss the other questions raised.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.